** PART II **
WHILE FINDING THAT DIRECT COERCION WAS NOT NECESSARY TO CONSTITUTE A VIOLATION OF THE ESTABLISHMENT CLAUSE, THE COURT NOTED THAT WHEN THE STATE PUT ITS PRESTIGE AND FINANCIAL SUPPORT BEHIND A PARTICULAR RELIGIOUS PRACTICE, AN INDIRECT COERCIVE PRESSURE EXISTS:
 "WHEN THE POWER, PRESTIGE AND FINANCIAL SUPPORT OF GOVERNMENT IS PLACE BEHIND A PARTICULAR RELIGIOUS BELIEF, THE INDIRECT COERCIVE PRESSURE UPON RELIGIOUS MINORITIES TO CONFORM TO THE PREVAILING OFFICIALLY APPROVED RELIGION IS PLAIN. BUT THE PURPOSES UNDERLYING THE ESTABLISHMENT CLAUSE GO MUCH FURTHER THAN THAT. ITS FIRST AND MOST IMMEDIATE PURPOSE RESTED ON THE BELIEF THAT A UNION OF GOVERNMENT AND RELIGION TENDS TO DESTROY GOVERNMENT AND TO DEGRADED RELIGION. 370 U.S. AT 431 (EMPHASIS ADDED)."
IN CHARACTERIZING THE GENERAL PRINCIPLE BEHIND THE ESTABLISHMENT CLAUSE, THE COURT IN STRIKING DOWN NEW YORK'S PRAYER IN SCHOOL REQUIREMENT HELD:
 "THE ESTABLISHMENT CLAUSE THUS STANDS AS AN EXPRESSION OF PRINCIPLE ON THE PART OF THE FOUNDERS OF OUR CONSTITUTION THAT RELIGION IS TOO PERSONAL, TOO SACRED, TOO HOLY, TO PERMIT ITS "UNHALLOWED PERVERSION" BY A CIVIL MAGISTRATE."
370 U.S. AT 431-32 (EMPHASIS ADDED).
LESS THAN A YEAR LATER, THE SUPREME COURT CONSIDERED ANOTHER PRAYER IN SCHOOL CASE IN ABINGTON. A SCHOOL DISTRICT V. SCHEMPP, 374 U.S. 203 (1963). UNDER PROCEDURES THE SCHOOL DISTRICTS OF THE CITY OF BALTIMORE AND ABINGTON TOWNSHIP ADOPTED, UNDER TWO STATE LAWS, SCHOOL DISTRICT STUDENTS BEGAN THEIR SCHOOL DAY WITH AN OPENING EXERCISE — A READING FROM THE BIBLE OR A RECITATION OF THE LORD'S PRAYER, OR BOTH. IN STRIKING DOWN THIS PRACTICE, THE SUPREME COURT, AFTER REVIEWING ITS PRIOR JURISPRUDENCE, CONCLUDED:
 "AS WE HAVE INDICATED, THE ESTABLISHMENT CLAUSE HAS BEEN DIRECTLY CONSIDERED BY THIS COURT EIGHT TIMES IN THE PAST SCORE OF YEARS AND, WITH ONLY ONE JUSTICE DISSENTING ON THE POINT, IT HAS CONSISTENTLY HELD THAT THE CLAUSE WITHDREW ALL LEGISLATIVE POWER RESPECTING RELIGIOUS BELIEF OR THE EXPRESSION THEREOF. THE TEST MAY BE STATED AS FOLLOWS: WHAT ARE THE PURPOSE AND THE PRIMARY EFFECT OF THE ENACTMENT? IF EITHER IS THE ADVANCEMENT OR INHIBITION OF RELIGION THEN THE ENACTMENT EXCEEDS THE SCOPE OF LEGISLATIVE POWER AS CIRCUMSCRIBED BY THE CONSTITUTION. THAT IS TO SAY THAT TO WITHSTAND THE STRICTURES OF THE ESTABLISHMENT CLAUSE THERE MUST BE A SECULAR LEGISLATIVE PURPOSE AND A PRIMARY EFFECT THAT NEITHER ADVANCES NOR INHIBITS RELIGION. 374 U.S. AT 222. (EMPHASIS ADDED)."
THE COURT FOUND THAT UNDER THE PRACTICE IN BOTH SCHOOL DISTRICTS, THE OPENING EXERCISES WERE PRESCRIBED AS PART OF THE CURRICULUM ACTIVITIES OF THE STUDENTS, AND WERE HELD IN THE SCHOOL BUILDING UNDER THE SUPERVISION OF PARTICIPATING TEACHER. THE COURT CONCLUDED THAT THE OPENING EXERCISES WERE GOVERNMENTALLY-SPONSORED RELIGIOUS CEREMONIES, HOLDING THAT THE PRIMARY EFFECT OF THE OPENING EXERCISES WAS THE ADVANCEMENT OF RELIGION. 374 U.S. 223,224. AFTER FINDING BOTH OF THE OPENING EXERCISES TO BE IN DIRECT VIOLATION OF THE ESTABLISHMENT CLAUSE, THE COURT SPECIFICALLY FOUND THAT IT WAS NO DEFENSE TO THE CONSTITUTIONAL CHALLENGE THAT STUDENTS, UPON PARENTAL REQUEST, COULD ABSENT THEMSELVES FROM THE EXERCISES. 374 U.S. 224-225. THE COURT ALSO SPECIFICALLY FOUND THAT IT WAS NO DEFENSE TO URGE THAT THE RELIGIOUS PRACTICES WERE RELATIVELY MINOR ENCROACHMENTS ON THE FIRST AMENDMENT, THE COURT STATING:
 "THE BREACH OF NEUTRALITY THAT IS TODAY A TRICKLING STREAM MAY ALL TOO SOON BECOME A RAGING TORRENT AND, IN THE WORDS OF MADISON, "IT IS PROPER TO TAKE ALARM AT THE FIRST EXPERIMENT ON OUR LIBERTIES." 374 U.S. AT 225.
IN CONCLUDING THE OPINION, THE COURT COMMENTED ON THE PLACE OF RELIGION IN SOCIETY AND THE GOVERNMENT'S COMMITMENT NOT TO INVADE THE RELIGIOUS CITADEL:
 "THE PLACE OF RELIGION IN OUR SOCIETY IS AN EXALTED ONE, ACHIEVED THROUGH A LONG TRADITION OF RELIANCE ON THE HOME, THE CHURCH AND THE INVIOLABLE CITADEL OF THE INDIVIDUAL HEART AND MIND. WE HAVE COME TO RECOGNIZE THROUGH BITTER EXPERIENCE THAT IT IS NOT WITHIN THE POWER OF GOVERNMENT TO INVADE THAT CITADEL, WHETHER ITS PURPOSE OR EFFECT BE TO AID OR OPPOSE, TO ADVANCE OR RETARD. IN THE RELATIONSHIP BETWEEN MAN AND RELIGION, THE STATE IS FIRMLY COMMITTED TO A POSITION OF NEUTRALITY." 374 U.S. AT 226 (EMPHASIS ADDED).
FIVE YEARS AFTER THE SCHEMPP DECISION, THE COURT ONCE AGAIN CONSIDERED RELIGIOUS ACTIVITIES IN PUBLIC SCHOOL, IN EPPERSON V. ARKANSAS, 393 U.S. 97 (1968). IN EPPERSON, A YOUNG BIOLOGY TEACHER SOUGHT REMOVAL OF THE PROHIBITION IMPOSED UPON HER BY AN ARKANSAS STATUTE THAT WAS AN ADAPTATION OF THE FAMOUS TENNESSEE "MONKEY LAWS," WHICH PROHIBITED THE TEACHING OF DARWIN'S THEORY OF EVOLUTION. IN STRIKING THE STATUTE DOWN, BECAUSE IT WAS IN CONFLICT WITH THE CONSTITUTIONAL PROHIBITION RESPECTING THE ESTABLISHMENT OF RELIGION, THE COURT NOTED THAT THE OVERRIDING FACT WAS THAT THE ARKANSAS STATUTE SELECTED FROM THE BODY OF KNOWLEDGE A PARTICULAR SEGMENT WHICH IT PROSCRIBED "FOR THE SOLE REASON THAT IT IS DEEMED TO CONFLICT WITH A PARTICULAR RELIGIOUS DOCTRINE; THAT IS, WITH A PARTICULAR INTERPRETATION OF THE BOOK OF GENESIS BY A PARTICULAR RELIGIONS GROUP." 393 U.S. AT 103.
REFERRING TO ITS PRIOR CASES, THE COURT NOTED THAT "GOVERNMENT IN A DEMOCRACY, STATE AND NATIONAL, MUST BE NEUTRAL IN MATTERS OF RELIGIOUS THEORY, DOCTRINE AND PRACTICE." 393 U.S. AT 103-104. THEN, COMMENTING ON THE CONSTITUTIONAL PROHIBITIONS PUT UPON GOVERNMENT, THE COURT STATED THAT GOVERNMENT "MAY NOT BE HOSTILE TO ANY RELIGION OR TO THE ADVOCACY OF ANY NO-RELIGION; AND IT MAY NOT AID, FOSTER, OR PROMOTE ONE RELIGION OR RELIGIOUS THEORY AGAINST ANOTHER OR EVEN AGAINST THE MILITANT OPPOSITE." 393 U.S. AT 104.
THE COURT THEN STRUCK DOWN THIS ARKANSAS LAW, FINDING THAT THE LAW AIDED RELIGION BY PREVENTING THE TEACHING OF EVOLUTION, NOTING THAT THE LAW'S PRIMARY EFFECT WAS ADVANCEMENT OF A PARTICULAR RELIGIOUS THEORY. 393 U.S. AT 107.
IN 1971, IN LEMON V. KURTZMAN, 403 U.S. 602 (1971), THE SUPREME COURT STRUCK DOWN AS UNCONSTITUTIONAL A STATE STATUTE WHICH PROVIDED FOR PARTIAL REIMBURSEMENT OF NON-PUBLIC SCHOOL TEACHERS FOR SECULAR INSTRUCTION OFFERED AT RELIGIOUS SCHOOLS. IN LEMON, THE COURT ARTICULATED A THREE-PART ESTABLISHMENT CLAUSE TEST. UNDER THE TEST, IN ORDER TO SATISFY THE ESTABLISHMENT CLAUSE, THE GOVERNMENTAL PRACTICE MUST (1) REFLECT A CLEARLY SECULAR PURPOSE; (2) HAVE A PRIMARY EFFECT THAT NEITHER ADVANCES NOR INHIBITS RELIGION; AND (3) AVOID EXCESSIVE GOVERNMENT ENTANGLEMENT WITH RELIGION. 403 U.S. AT 612-613; COMMITTEE FOR PUBLIC EDUCATION AND RELIGIOUS LIBERTY V. NYAUIST, 413 U.S. 756,773 (1973). IN ESTABLISHING THIS TEST, THE LEMON COURT ARTICULATED THE "THREE MAIN EVILS" AGAINST WHICH THE ESTABLISHMENT CLAUSE WAS INTENDED TO AFFORD PROTECTION:
1. SPONSORSHIP,
2. FINANCIAL SUPPORT, AND
 3. ACTIVE INVOLVEMENT OF THE SOVEREIGN IN RELIGIONS ACTIVITY. 403 U.S. AT 612.
MOST RECENTLY, AS YOU KNOW, IN LEE V. WEISMAN, U.S. ,112 S.CT. 2649 (1992), THE SUPREME COURT EXAMINED THE CONSTITUTIONALITY OF RELIGIOUS INVOCATIONS AND BENEDICTIONS AT MIDDLE AND HIGH SCHOOL GRADUATIONS. ALTHOUGH IN K THE COURT WAS INVITED TO REVISIT AND RECONSIDER ITS DECISION IN LEMON V. KURTZMAN, THE COURT DECLINED TO DO SO. 112 S.CT. AT 2655. IN ANALYZING THE CASE UNDER THE LEMON TEST, THE COURT FOUND THAT IT IS UNDISPUTED THAT "AT A MINIMUM" STATES MAY NOT COERCE ANYONE TO SUPPORT OR PARTICIPATE IN RELIGIOUS EXERCISE, AND FOUND THAT THE GOVERNMENT'S INVOLVEMENT IN THE BENEDICTION AND INVOCATION CHALLENGED IN THE CASE VIOLATED THIS CENTRAL PRINCIPLE.
IN LEE, SCHOOL OFFICIALS AND THE PRINCIPAL DECIDED THAT AN INVOCATION AND BENEDICTION SHOULD BE GIVEN AT THE GRADUATION CEREMONY; THE PRINCIPAL CHOSE THE RELIGIOUS PARTICIPANT, A RABBI, AND FURTHER PROVIDED THE RABBI WITH ADVICE THAT HIS PRAYER SHOULD BE NONSECTARIAN. D. THROUGH THESE MEANS, AS THE COURT NOTED, THE PRINCIPAL DIRECTED AND CONTROLLED THE CONTENT OF THE PRAYER. THE OPINION SPEAKS OF A "HEIGHTENED CONCERN" WITH PROTECTING STUDENTS' FREEDOM OF CONSCIOUS FROM "SUBTLE COERCIVE PRESSURES IN THE ELEMENTARY AND SECONDARY PUBLIC SCHOOLS." THE COURT FOUND THAT EVEN THOUGH ATTENDANCE AT THE GRADUATION WAS VOLUNTARY, THERE WAS AN INDIRECT COERCION.
THE DECISION OF THE COURT IN LEE V. WEISMAN IS THE OPINION OF FIVE JUSTICES. FOUR OF THE JUSTICES IN THE MAJORITY EITHER AUTHORED OR JOINED ONE OF TWO CONCURRING OPINIONS. BOTH OF THE CONCURRING OPINIONS SPECIFICALLY NOTE THAT PROOF OF GOVERNMENT COERCION IS NOT NECESSARY TO PROVE AN ESTABLISHMENT CLAUSE VIOLATION. JUSTICE BLACKMUN, IN HIS CONCURRING OPINION IN WHICH JUSTICE STEVENS AND O'CONNOR JOINED, FOUND THAT COERCION IS NOT A NECESSARY ELEMENT AS FOLLOWS:
 "ALTHOUGH OUR PRECEDENTS MAKE CLEAR THAT PROOF OF GOVERNMENT COERCION IS NOT NECESSARY TO PROVE AN ESTABLISHMENT CLAUSE VIOLATION, IT IS SUFFICIENT. GOVERNMENT PRESSURE TO PARTICIPATE IN A RELIGIOUS ACTIVITY IS AN OBVIOUS INDICATION THAT THE GOVERNMENT IS ENDORSING OR PROMOTING RELIGION."
BUT IT IS NOT ENOUGH THAT THE GOVERNMENT RESTRAIN FROM COMPELLING RELIGIOUS PRACTICES: IT MUST NOT ENGAGE IN THEM EITHER." 112 S.CT. AT 2664 (EMPHASIS ADDED).
SIMILARLY, JUSTICE SOUTER IN HIS CONCURRING OPINION, IN WHICH JUSTICES STEVENS AND O'CONNOR ALSO JOINED, FOUND THAT COERCION IS NOT A NECESSARY ELEMENT TO PROVE AN ESTABLISHMENT CLAUSE VIOLATION:
 "I APPRECIATE THE FORCE OF SOME OF THE ARGUMENTS SUPPORTING A "COERCION" ANALYSIS OF THE CLAUSE. (CITES OMITTED) BUT WE COULD NOT ADOPT THAT READING WITHOUT ABANDONING OUR SETTLED LAW, A COURSE THAT, IN MY VIEW, THE TEXT OF THE CLAUSE WOULD NOT READILY PERMIT." 112 U.S. AT 671.
THUS WE SEE THAT THE COURT'S CONSIDERATION OF THE COERCIVE EFFECT OF THE STATE'S SPONSORSHIP AND SUPPORT OF PRAYERS AT THE GRADUATION IN LEE IS NOT AN INDICATION THAT REMOVAL OF THE COERCIVE NATURE OF THE STATE'S ENTANGLEMENT IS NECESSARILY A DEFENSE TO AN ESTABLISHMENT CLAUSE VIOLATION. INDEED, FOUR OF THE FIVE JUSTICES FORMING THE MAJORITY IN LEE SPECIFICALLY REJECTED THE NOTION THAT COERCION WAS A NECESSARY ELEMENT IN PROVING A ESTABLISHMENT CLAUSE VIOLATION. ACCORDINGLY, THE FACT THAT PARTICIPATION IN ANY SCHOOL SPONSORED RELIGIOUS CEREMONY IS VOLUNTARY ON THE PART OF STUDENTS, MAY NOT CONSTITUTE A DEFENSE TO THE ALLEGATION THE DISTRICT HAS VIOLATED THE ESTABLISHMENT CLAUSE. WHETHER A PUBLIC SCHOOL MAY CONDUCT A BACCALAUREATE CEREMONY WITHOUT VIOLATING THE ESTABLISHMENT CLAUSE, IN ALL LIKELIHOOD WILL NOT TURN ON WHETHER ATTENDANCE AT THE CEREMONY BY STUDENTS IS VOLUNTARY OR INVOLUNTARY. RATHER, THE PROPRIETY OF A SCHOOL DISTRICT CONDUCTING A BACCALAUREATE CEREMONY WOULD LIKELY BE MEASURED BY A COURT SOLELY UNDER THE LEMON V. KURTZMAN TEST DISCUSSED ABOVE.
THE UNITED STATES SUPREME COURT HAS ITSELF HELD THAT THIS AREA OF THE LAW IS "FACT SENSITIVE." THUS, ANY DECISION IN THIS AREA BY A SCHOOL BOARD SHOULD BE MADE IN LIGHT OF THE LEMON V. KURTZMAN, 403 U.S. 602 (1971) AND IN CLOSE CONSULTATION WITH THE SCHOOL BOARD'S COUNSEL.
(NEAL LEADER)